# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **OLATHE/SANTA FE PARTNERSHIP, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-2374-CM** |
| | ) | |
| **JOHN K. DOULL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on two motions to dismiss (Docs. 6 and 16). For the reasons discussed below, the court grants the motions as to plaintiffs' cause of action under the Racketeer Influenced and Corrupt Organization Act ("RICO") and declines to exercise supplemental jurisdiction over the remaining state law claims.[1]

### I. Background[2]

Defendant Cornerstone Bank ("the Bank") is a banking organization in Kansas that provides loans. The remaining defendants are officers or directors of the Bank. In 2004 and 2006 the Bank executed loans with plaintiff Olathe/Santa Fe Partnership ("OSFP"). Each loan was secured by a mortgage on real property.

The parties operated under the terms of the loans for several years without objection. The relationship soured in 2010 when the Bank filed a petition in state court to foreclose on the 2006

---

[1] Plaintiffs argue that defendants failed to comply with District of Kansas Rule 7.6. The court disagrees. Plaintiffs also argue that this motion must be converted to a motion for summary judgment. The court did not consider information that would necessitate conversion.

[2] This background is provided for context and is based on information in the complaint as well as information of which the court can take judicial notice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining that the court can consider matters of which it can take judicial notice in deciding Rule 12(b)(6) motion).

mortgage and recover on the loan.[3]  The Bank filed a similar petition in state court in 2012 to foreclose on the 2004 mortgage.[4]  In response to both petitions, plaintiffs alleged counterclaims and affirmative defenses based on fraud and breach of contract.  In both state court cases, the court entered judgment in favor of the Bank and against plaintiffs on all claims and counterclaims.

Plaintiffs filed this lawsuit in 2012 and allege that defendants made fraudulent statements and misrepresentations during the negotiation, modification, and performance of the loans.  Plaintiffs bring claims under RICO as well as claims for fraud, fraudulent nondisclosure, negligent misrepresentation, breach of fiduciary duty, publication of injurious falsehood, negligent/reckless failure to supervise, and civil conspiracy.  Defendants now seek dismissal of plaintiffs' claims based on lack of subject-matter jurisdiction, failure to state a claim (e.g., preclusion), and *Colorado River* doctrine abstention.[5]

## II. Subject-Matter Jurisdiction

Defendants argue that this court lacks subject-matter jurisdiction based on the *Rooker-Feldman* doctrine.[6]  This doctrine draws its name from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  And it precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

---

[3]   *Cornerstone Bank v. Olathe/Santa Fe P'ship*, District Court of Johnson County, Kansas (10CV07895).

[4]   *Cornerstone Bank v. Olathe/Santa Fe P'ship*, District Court of Johnson County, Kansas (12CV02168).

[5]   The *Colorado River* doctrine is an abstention doctrine and does not divest the court of subject-matter jurisdiction. *Foxfield Villa Assocs., LLC v. Regnier*, No. 12-2528-CM, 2013 U.S. Dist. LEXIS 7048, at *5–6 (D. Kan. Jan. 17, 2013) (explaining that the *Colorado River* doctrine does not fall under any enumerated provision of Rule 12(b)).

[6]   The parties do not devote significant briefing to this issue, but the court must examine it before the merit-based disputes.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010).

The Supreme Court has cautioned that this is a narrow doctrine and that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine . . . ." *Exxon*, 544 U.S. at 284. Therefore, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (quotation and brackets omitted).

The court concludes that the *Rooker-Feldman* doctrine does not apply for two reasons. First, this lawsuit was filed before the state-court proceedings concluded. *See Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 788 n.3 (10th Cir. 2008) (explaining that the doctrine is confined to cases brought after the state-court proceedings are final). Plaintiffs filed the instant complaint while the 2010 state court action was on appeal and while summary judgments motions were pending in the 2012 action. *See Guttman v. Khalsa*, 446 F.3d 1027, 1029 (10th Cir. 2006) (explaining that the district court had jurisdiction because case was filed before the end of the state courts' appeal process).

Second, the injuries that plaintiffs complain about in this case were not caused by the state-court judgments. Plaintiffs' present claims, narrowly construed, do not reject the state-court judgments. These claims may deny the state courts' legal conclusions that the Bank did not engage in fraud. But this issue implicates preclusions doctrines, not the *Rooker-Feldman* doctrine. The court retains subject-matter jurisdiction over plaintiffs' claims.

### III. Failure To State A Claim

Defendants argue that plaintiffs failed to state a claim, asserting various theories. In considering these Rule 12(b)(6) challenges, all well-pleaded factual allegations—as distinguished from conclusory allegations—are accepted as true and viewed in the light most favorable to plaintiffs. To survive this motion, plaintiffs must provide "enough facts to state a claim to relief that is plausible on

its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is not sufficient if it offers "naked assertions[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal citation and quotation omitted).

Defendants argue that plaintiffs' RICO claim should be dismissed because plaintiffs did not allege at least two acts of racketeering that form a pattern of racketeering activity. Specifically, defendants contend that plaintiffs (1) failed to allege two predicate acts with particularity, and (2) did not allege a continuing pattern. Because the court agrees with defendants on these issues, the court dismisses plaintiffs' RICO claims and declines to exercise supplemental jurisdiction over the state-law claims. The court does not consider defendants' remaining arguments (e.g., preclusion, abstention, etc.).

To state a RICO claim, a plaintiff must plead the following elements: "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). A pattern requires at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). And "racketeering activity" means any "act which is indictable" under federal law. *Id.* at § 1961(1).

This **<u>first issue</u>** is whether plaintiffs sufficiently alleged two predicate acts. Plaintiffs allege predicate acts of mail fraud and wire fraud. These predicate acts sound in fraud and must be alleged with particularity. *Tal*, 453 at 1263. This means plaintiffs must allege "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (internal citation and quotation omitted).

Plaintiffs have not sufficiently alleged two predicate acts. Although plaintiffs make statements that defendants defrauded them, mail fraud and wire fraud are not committed simply by sending false

statements through the mail or over the wires.  Plaintiffs also fail to allege enough facts regarding defendants' alleged fraud on other persons.  Instead, plaintiffs generally allege that "[t]he Bank and other defendants have made misrepresentations and engaged in bad faith conduct to defraud other persons [and] . . . [u]pon information and belief, such other persons include, but are not limited to, Sheryl Clanton, McCorkendale Construction, McClan, L.L.C. and Mark Neighbors."  (Doc. 1 at ¶¶ 287–88.)  These allegations do not indicate the time, place, and content of the misrepresentations, the person who made the false statement, or what acts resulted from the false statements.  *See Adolphe v. Option One Mortg. Corp.*, No. 11CV418, 2012 U.S. Dist. LEXIS 165689, at *18 (W.D.N.C. Nov. 20, 2012) (determining that plaintiff's allegation that "[d]efendants devised a scheme to fraudulent[ly] qualify such individuals for home loans and FHA guarantees by falsifying, fabricating, or overstating collateral and down payments" did not sufficiently allege mail or wire fraud).

Plaintiffs also mention Hobbs Act extortion.  The Hobbs Act prohibits interference with interstate commerce by extortion, as well as attempts or conspiracies to commit extortion.  18 U.S.C. § 1951(a).  Extortion means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  *Id.* at §1951(b)(2).  Plaintiffs fail to sufficiently allege extortion.  The allegations that the Bank wanted plaintiffs to negotiate and provide more collateral before advancing additional funds does not state a claim under this statute.  Because plaintiffs failed to sufficiently plead predicate acts, the court dismisses the RICO claim.

The **second issue** is whether plaintiffs alleged a pattern of racketeering activity.  To show a pattern of racketeering activity, a RICO plaintiff must also show (1) a relationship between the predicate acts, and (2) the threat of continuing activity.  *H.J. Inc. v. NW Bell Tel. Co.*, 492 U.S. 229,

239 (1989).  A plaintiff may demonstrate a threat of continuing activity by establishing either closed-ended or open-ended continuity, which mean:

> [C]losed-ended continuity requires a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months are insufficient.  Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct.

*Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989) (internal quotations and citations omitted); *see also H.J. Inc.*, 492 U.S. at 241 (stating that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement").

In this case, the court cannot determine whether the predicate acts extended over "a substantial period of time" because plaintiffs failed to allege dates regarding defendants' alleged fraud on other persons.  And plaintiffs have not sufficiently alleged any threat of future criminal activity.  *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (explaining that acts extending over 23 months may be a "substantial period of time" but holding that continuity was not established because "the facts as alleged fail to show any threat of 'future criminal conduct'").  Instead, plaintiffs have alleged a closed-ended series of predicate acts (mail fraud, wire fraud, extortion) constituting a single scheme (reduce the number of real estate loans) to accomplish a discrete goal (increase liquidity) directed at a finite group of individuals with no potential to extend to other persons or entities.  Recognizing a RICO claim in this instance would not serve the objectives of the statute.  *See, e.g., H.J. Inc.*, 492 U.S.  at 242 ("Congress was concerned in RICO with longterm criminal conduct").  The court dismisses this claim for the additional reason that plaintiffs failed to allege continuity.

## IV. Leave To Amend

Plaintiffs ask the court for leave to amend the complaint if the RICO claim is deficient.  But plaintiffs' request is merely a passing reference in their opposition and does not give the court

adequate notice of the basis of the proposed amendment. (Doc. 24 at 37 ("[S]hould the [c]ourt determine that [the complaint] fails to state [a RICO claim] with sufficient particularity, the [c]ourt should permit [p]laintiffs leave to amend their [complaint] to correct any perceived deficiency.").) And, even assuming that all the information contained in plaintiffs' opposition appeared in the complaint (e.g., information regarding Mr. Mike Eddings), plaintiffs' RICO claim would still be subject to dismissal for the reasons discussed above. To the extent plaintiffs argue they would have alleged additional information not contained in their opposition, this court is not required to "read the minds of litigants to determine if information justifying an amendment exists . . . ." *Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009). The court denies plaintiffs' request.

## V. Supplemental Jurisdiction

The court dismisses plaintiffs' RICO claim. This was the only claim over which the court had original jurisdiction. Plaintiffs' remaining claims arise under state law. Although the court could exercise supplemental jurisdiction, the court declines to do so. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (internal quotation and citation omitted). There are no compelling circumstances that justify this court retaining jurisdiction. This case is in the early stages, a scheduling order has not been entered, and no formal discovery has been exchanged. The court, therefore, declines to exercise supplemental jurisdiction and dismisses plaintiffs' remaining claims. The court also denies as moot and without prejudice the remaining portions of defendants' motions to dismiss.

**IT IS THEREFORE ORDERED** that Separate Defendants John K. Doull, Nancy A. Taylor, John V. Doull, Thomas DeBacco, Brad Harvey, Michael N. McDaniel, and Cornerstone Bank's Motion To Dismiss (Doc. 6) is granted in part. The *Rooker-Feldman* doctrine does not bar this court's

jurisdiction.  The court dismisses plaintiffs' RICO claim.  The court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims and dismisses those claims without prejudice. The court denies the remainder of defendants' motion as moot and without prejudice.

**IT IS FURTHER ORDERED** that Motion And Memorandum To Dismiss Of Separate Defendant Kent Whittaker (Doc. 16) is granted in part.  The *Rooker-Feldman* doctrine does not bar this court's jurisdiction.  The court dismisses plaintiffs' RICO claim.  The court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims and dismisses those claims without prejudice.  The court denies the remainder of defendants' motion as moot and without prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' request for leave to amend is denied.

Dated this  19th day of April, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
United States District Judge